[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ctr. for Media & Democracy v. Yost*, Slip Opinion No. 2026-Ohio-1899.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1899

THE STATE EX REL. CENTER FOR MEDIA AND DEMOCRACY ET AL., APPELLEES, *v.* OFFICE OF ATTY. GEN. YOST, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ctr. for Media & Democracy v. Yost*, Slip Opinion No. 2026-Ohio-1899.]**

(No. 2023-0270—Submitted January 8, 2025—Decided May 27, 2026.)

*Mandamus—Public-records requests—Discovery—In public-records mandamus action, court of appeals issued discovery order compelling responses to interrogatories and requests for production of documents and ordering attorney general to appear for deposition—Discovery in a public-records mandamus action must be restricted to conform with the purpose of discovery set forth in Civ.R. 26(A) and the scope of discovery set forth in Civ.R. 26(B)(1)—When requested records cannot be or have not been produced, courts should limit discovery in a public-records mandamus action to the nature of the public office's search for responsive records and to information relevant to the claims and defenses asserted by the parties—When requested*

*records exist and can be produced but the parties dispute whether the records should be produced, any discovery must be confined by the claims asserted by the requester and the defenses asserted by the public office relative to producing the records—In issuing its discovery order, the court of appeals misapplied the law and abused its discretion in determining the correct scope of discovery under Civ.R. 26(B)(1) in context of a public-records mandamus action and in ordering deposition of a high-ranking government official—Court of appeals' discovery order vacated and cause remanded for proper consideration of discovery requests.*

APPEAL from the Court of Appeals for Franklin County, No. 20AP-554, 2023-Ohio-364.

_____

FISCHER, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ., joined. BRUNNER, J., dissented, with an opinion.


**FISCHER, J.**

{¶ 1} Appellant, the Office of Attorney General Dave Yost, appeals the Tenth District Court of Appeals' order compelling the attorney general's responses to various discovery requests and ordering him to sit for a deposition in a public-records mandamus action. Appellees, the Center for Media and Democracy and David Armiak (collectively, "Armiak"), filed the underlying mandamus action in the Tenth District to obtain a writ compelling the attorney general to provide records responsive to a public-records request. In that public-records request, Armiak sought records pertaining to the attorney general's involvement with the Republican Attorneys General Association ("RAGA") and the Rule of Law Defense Fund ("RLDF"). In response to Armiak's requests for production of documents, the attorney general provided some documents to Armiak and submitted other documents to a court-of-

appeals magistrate for in camera review; he has refused to search for and produce other records, arguing in part that Armiak is seeking documents that are not records of his office.

{¶ 2} In issuing the discovery order, the court of appeals misapplied the law and abused its discretion in determining the correct scope of discovery under Civ.R. 26(B)(1) in the context of a public-records mandamus action and in ordering the deposition of a high-ranking government official. We therefore vacate the court of appeals' discovery order and remand the case to that court for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Public-Records Request

{¶ 3} The Center for Media and Democracy describes itself as a "nonpartisan anti-corruption watchdog group." David Armiak is the center's research director. In March 2020, Armiak submitted a public-records request to the attorney general's office, seeking:

> [A]ll records that pertain to [RAGA], [RLDF], and the RAGA Winter Meeting held February 29 through March 2 from the Office of Attorney General Dave Yost. The scope of this request includes the Attorney General and Chief of Staff. The scope of this request should include but is not limited to emails, attachments, both sent and received, all draft records, briefing books, memos, notes, minutes, scheduling records, text messages, other correspondence (internal and external) and all other records.

The attorney general's office declined to produce the requested records, taking the position that documents responsive to the request are not records of the office.

{¶ 4} Armiak objected to the response from the attorney general's office. In an email sent to the office in June, Armiak insisted that he had requested records

documenting the functions of the attorney general's office. Specifically, Armiak contended that the attorney general's and chief of staff's interactions with RAGA and RLDF "involve extensive matters of public policy and the conduct of public business." He also noted that the attorney general and his staff members "appear to have attended RAGA and RLDF events in their official capacities," which events included "legal and policy-focused presentations and panel discussions, as well as the opportunity for personal interactions with corporate executives, lobbyists, and lawyers concerning matters of public policy." Based on these observations, Armiak urged the attorney general's office to reconsider its response to Armiak's public-records request.

{¶ 5} In July, the attorney general's office responded to Armiak's email, informing Armiak that the office had no "email, text, drafts, memo, minutes, or other correspondence records" responsive to the public-records request and reiterating that "any other information does not meet the definition of a record as defined by Ohio's Public Records Act[, R.C.] 149.43."

### B. Mandamus Action and Ensuing Discovery

{¶ 6} Armiak filed an original action in the Tenth District, seeking a writ of mandamus compelling the attorney general to provide records responsive to his public-records request. The attorney general moved to dismiss the action for failure to state a claim upon which relief can be granted, arguing that (1) the documents sought by Armiak do not meet the definition of "records" set forth in R.C. 149.011(G), because they do not document the functions of the attorney general's office and (2) other requested categories of responsive records do not exist. The court-of-appeals magistrate assigned to the case denied the motion to dismiss. No. 20AP-554, 5 (10th Dist. Feb. 24, 2021).

{¶ 7} After the attorney general filed his answer, the court-of-appeals magistrate set a briefing schedule and ordered the parties to file stipulated or certified evidence. No. 20AP-554 (10th Dist. Mar. 25, 2021). Armiak moved for an

extension of the briefing and evidence-submission schedule in order to conduct discovery, arguing that the disputed facts related to whether public records exist and that discovery was necessary to rebut the attorney general's contention that the nature of the records are not related to the "public functions" of his office and to determine whether the attorney general and his staff "were performing particular functions on their own time or on 'state time.'" Armiak argued that depositions were needed to determine how certain amicus briefs and letters to Congress were generated during the period covered by the records request. The attorney general opposed the extension motion because "the issue in this case is not determining 'how particular amicus briefs and letters to Congress were generated'" but rather is "whether public records exist." The magistrate granted the extension motion. No. 20AP-554 (10th Dist. Apr. 1, 2021).

{¶ 8} During discovery, Armiak took several depositions of staff members of the attorney general's office, including the attorney general's chief of staff, scheduler, and executive assistant as well as a member of the office's public-records unit. Armiak also filed notices to take the depositions of the attorney general and the then-solicitor general. The attorney general sought a protective order to prevent Armiak from deposing him and the then-solicitor general.

{¶ 9} As for nondeposition discovery, Armiak served the attorney general with eight interrogatories and 16 requests for production of documents. The attorney general objected to several of Armiak's interrogatories and requests for production of documents. Relevant to this appeal, the attorney general objected to the following interrogatories:

2. Identify each and every person employed by the Office of the Ohio Attorney General who did any of the following in the years 2019-2021:

a. Communicated in any form with representatives, officers, and/or employees of RAGA and/or RLDF.

b. Attended any meeting and/or conference sponsored in whole or part by RAGA and/or RLDF.

c. Requested, received, and/or assisted in processing any reimbursement of expenses by RAGA and/or RLDF.

d. Drafted and/or assisted in drafting documents (including briefs, letters, and/or press releases) that involved other Republican state attorneys general and/or their offices in any way (including by signing, co-authoring, drafting, and/or revising).

e. Received, sent, and/or were copied on requests to and/or from RAGA, RLDF, and/or other Republican state attorneys generals and/or their offices seeking cooperation and/or participation in litigation, amicus curiae filings, lobbying, petition, and/or corresponding with government bodies.

f. Accessed any RAGA and/or RLDF online "briefing room" or other file-sharing system sponsored, hosted, and/or arranged by RAGA and/or RLDF.

. . .

4. For the time period January 14, 2019, through the present, identify all RAGA and/or RLDF events that [the attorney general] and/or any of [the attorney general's] employees attended, how they were identified at each such event and in the corresponding event materials, and any speeches, presentations, panels, interviews, or fundraising events in which they were involved at or in conjunction with each such event.

. . .

5. For the time period January 14, 2019, through the present, identify all court filings, letters to federal agencies (including, but not limited to, any of their individual representatives), and other documents submitted, circulated, delivered, and/or publicized to any public official(s) or the media with respect to which the [attorney general] and/or his staff received input and/or other assistance from RAGA and/or RLDF, including, but not limited to, in the form of drafting or reviewing communications or other documents and/or coordinating information, communications, documents, or signatures.

Among other objections, the attorney general noted that these interrogatories were not proportional to the needs of this case because the sole issue of this case is whether the attorney general's office has records responsive to Armiak's public-records request.

{¶ 10} As to Armiak's requests for production of documents, the attorney general agreed to submit some documents that his office had "identified as responsive to [Armiak's] public records request that were withheld because they were not records of the office" to the court-of-appeals magistrate for in camera review. Relevant to this appeal, the attorney general declined to produce documents responsive to the following requests for production of documents:

6. For the period January 14, 2019, to the present, produce any and all documents generated and/or received by [the attorney general] and/or any of [the attorney general's] employees concerning and/or related to the planning, coordination, preparation, circulation, and/or signature of any and all letters signed by [the attorney general] (and/or presented to the [attorney general] for consideration of

signing) together with any one or more other Republican state attorneys general and/or attorney general candidates.

. . .

7. For the period January 14, 2019, to the present, produce any and all documents generated and/or received by the [attorney general] and/or any of [the attorney general's] employees concerning and/or related to the planning, coordination, preparation, circulation, and/or signature of any and all amicus briefs signed by the [attorney general] (and/or presented to the [attorney general] for consideration of signing) together with any one or more other Republican state attorneys general and/or attorney general candidates.

. . .

8. For the period January 14, 2019, to the present, produce any and all documents generated and/or received by the [attorney general] and/or any of [the attorney general's] employees regarding in-person and/or remotely conducted meetings, briefings, seminars, and/or continuing education events the [attorney general] and/or the [attorney general's] staff was invited to, agreed to attend, and/or did attend that any one or more other Republican state attorneys general, attorney general candidates, and/or members of their staff also attended, including but not limited to all invitations and/or other communications, minutes, notes, sign-in sheets, PowerPoints and/or other slide decks, and/or handouts.

. . .

10. For the period January 14, 2019, to present, produce any and all e-mail and/or text messages, relating in any way to the topics listed in Requests for Production Nos. 1 through 8, above, stored on the computers and/or mobile devices of, and/or sent or received

(including by "cc" or "bcc") using any personal, business, campaign, and/or state-provided e-mail and/or mobile account of the following:

    a. Dave Yost

    b. Benjamin Flowers

    c. Benjamin Marrison

    d. Amy Sexton

    e. Each other person identified in response to Interrogatory 2.

. . .

11. For the period January 14, 2019, to present, produce any and all e-mails, text messages, and/or word-processing files (such as files created by Microsoft Word, Excel, or PowerPoint), containing the terms "RAGA," "RLDF," "Republican Attorneys General Association," "Rule

of Law Defense Fund," "Piper," "apiper", "Jason Heath", "jheath", "Bisbee", "pbisbee", "Amanda Gonzalez", "agonzalez", "Ashley Highlander", "ahighlander", "Collins Atkinson", any email ending in "@republicanags.com" or "@rldf.org", "noreply@wufoo.com", "impeach", "impeachment", "war games", "Michael Flynn", "Mike Flynn", "Armiak", and/or "Center for Media and Democracy", stored on the computers and/or mobile devices of, and/or sent or received (including by "cc" or "bcc") using any personal, business, campaign, and/or state e-mail and/or mobile account of the following:

    a. Dave Yost

    b. Benjamin Flowers

    c. Benjamin Marrison

    d. Amy Sexton

    e. Each other person identified in response to Interrogatory 2.

The attorney general objected to these requests for production of documents for numerous reasons, including that they were not relevant or proportional to the needs of this case. For example, even though Armiak's public-records request sought records of the attorney general and his chief of staff, these requests for production of documents sought documents related to other persons. Moreover, the attorney general objected that the period that these requests for production of documents covered was overly broad because this case is limited to public records that existed when Armiak made his public-records request. Additionally, the attorney general argued that the scope of the requests for production of documents covered far more topics than what Armiak's public-records request covered.

{¶ 11} Armiak filed a motion to compel responses to his interrogatories and requests for production of documents and expansion of the attorney general's submission of documents for in camera review. Armiak argued that documents *outside the scope* of the records request were relevant to "help determine the public or non-public (or record or non-record) nature of the materials being withheld." Armiak maintained that the depositions that had been conducted "confirmed that [the attorney general's] staff and counsel have not even searched for most of the records requested because they made a blanket determination that anything [Armiak] requested was inherently not a public record." Armiak argued that the attorney general's refusal to search for the requested items, either in response to the public-records request or in discovery, was "unacceptable" and could be addressed only by granting his motion to compel.

{¶ 12} In opposing Armiak's motion to compel, the attorney general claimed that Armiak's discovery requests were overly burdensome and exceeded the scope of the case and the relief available to Armiak in this mandamus action. The attorney general argued that Armiak's discovery requests were contrary to the proportionality standard set forth in Civ.R. 26(B)(1) that prohibits burdensome, tangential discovery when such discovery is based on speculation and possibility that something might

exist. The attorney general asserted that the proportionality requirement should prohibit Armiak from turning the attorney general's office inside out based on speculation that responsive documents relating to RAGA and RLDF must exist, even though the attorney general represented that other than his calendar, his office did not have any responsive documents.

{¶ 13} The court-of-appeals magistrate granted Armiak's motion to compel responses to the above-quoted interrogatories and requests for production of documents and expansion of the scope of the magistrate's in camera review of documents. 2023-Ohio-364, ¶ 70-72, 77-78, 80 (10th Dist.). The magistrate ordered the attorney general to answer interrogatories asking him to identify (1) every employee in his office who engaged in a variety of activities related to RAGA, RLDF, and "other Republican state attorneys general and/or their offices" (interrogatory No. 2) (2) RAGA and RLDF events the attorney general or his staff members attended (interrogatory No. 4), and (3) the court filings, letters, or "other interactions with public officials for which" RAGA or RLDF gave assistance of input (interrogatory No. 5). *Id.* at ¶ 68, 71-72. As to the requests for production of documents, the magistrate ordered the attorney general to produce, among other things, all documents from all staff members related to letters and amicus briefs "prepared in conjunction with other RAGA members." *Id.* at ¶ 78 (granting motion to compel responses to request for production of documents Nos. 6 through 8). The magistrate also ordered the attorney general to "conduct searches of personal and public email accounts" of employees in response to requests for production of emails relating to certain topics or containing certain names or terms. *Id.* at ¶ 77 (granting motion to compel responses to request for production of documents Nos. 10 and 11).

{¶ 14} As for depositions, the magistrate granted a protective order preventing Armiak from deposing the then-solicitor general but denied the request to prevent Armiak from deposing the attorney general. *Id.* at ¶ 87. The magistrate determined that Armiak was "entitled to reasonable discovery to test [the attorney

general's] claim that his relationship with RAGA and RLDF is a purely personal matter unrelated to the substantive work of his office." *Id.* at ¶ 70. We observed in an earlier decision in this case that the magistrate's reasoning misconstrued the attorney general's argument because "the attorney general had not argued that his relationship with the RAGA and the RLDF was 'personal,' but rather that the documents in question 'were not records of the office because they do not document the functions of the office.'" 2024-Ohio-2786, ¶ 8.

{¶ 15} The attorney general filed a motion to set aside the magistrate's order, which the court of appeals denied. 2023-Ohio-364 at ¶ 1 (10th Dist.). In ruling against the attorney general, the court of appeals was not persuaded by the attorney general's argument that the statutory definition of "public record" should inform the permissible scope of discovery. *See id.* at ¶ 49. The court of appeals rejected this argument, concluding that it was an "artificial limitation" on the scope of permissible discovery in public-records cases. *Id.* at ¶ 50.

{¶ 16} The attorney general appealed the court of appeals' discovery order to this court. After filing the notice of appeal in this case, the attorney general commenced an original action in this court against the court of appeals, seeking a writ of prohibition to prevent the court of appeals from enforcing its discovery order. We granted the court of appeals' motion to dismiss that action. *State ex rel. Yost v. Tenth Dist. Court of Appeals*, 2023-Ohio-4259.

{¶ 17} Armiak filed a motion to dismiss the attorney general's appeal for lack of subject-matter jurisdiction, arguing that the court of appeals' discovery order was interlocutory and did not implicate the production of any privileged matter and that the order was therefore not appealable. We denied Armiak's motion and sua sponte ordered oral argument under S.Ct.Prac.R. 17.02(A). 2024-Ohio-2786 at ¶ 31.

{¶ 18} We now address the merits of the attorney general's appeal.

12

## II. ANALYSIS

{¶ 19} Because "courts have broad discretion over discovery matters," *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 2007-Ohio-5542, ¶ 18, an appellate court generally reviews a discovery dispute under an abuse-of-discretion standard, *see Ward v. Summa Health Sys.*, 2010-Ohio-6275, ¶ 13. But to the extent that the discovery dispute involves questions of law, those questions must be reviewed de novo. *See id.*

{¶ 20} In this case, the court of appeals compelled responses to interrogatories and requests for production of documents that the attorney general argues are not relevant or proportional to the needs of this public-records mandamus action. The court of appeals also ordered the attorney general, a high-ranking, statewide elected official, to appear for a deposition. For the reasons below, we agree with the attorney general that the court of appeals employed a faulty legal analysis regarding the correct scope of discovery in this public-records mandamus action.

### A. Ohio's Public Records Act

{¶ 21} Under the Public Records Act, any person can request a public record from the relevant public office and that public office is then required to provide a copy of the requested public record to the requester within a reasonable period. R.C. 149.43(B)(1). A "public record" includes "records kept by any public office." R.C. 149.43(A)(1). And the "records" subject to a public office's duty of disclosure are "any document, device, or item . . . created or received by or coming under the jurisdiction of any public office of the state . . . which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G).

{¶ 22} However, if the requested records do not fall under the definitions of "public record" under R.C. 149.43(A)(1) and "records" under R.C. 149.011(G), the public office has no obligation to provide them under the Public Records Act. *State ex rel. Dispatch Printing Co. v. Johnson*, 2005-Ohio-4384, ¶ 19, 40. "To the extent

that an item does not serve to document the activities of a public office, it is not a public record and need not be disclosed." *State ex rel. Beacon Journal Publishing Co. v. Bond*, 2002-Ohio-7117, ¶ 9; *see also State ex rel. McCleary v. Roberts*, 2000-Ohio-345, ¶ 10-11. Additionally, the public office is not required to generate or create records in order to respond to a records request. *See State ex rel. Morgan v. New Lexington*, 2006-Ohio-6365, ¶ 30.

{¶ 23} When a public office denies any part of a public-records request, the requester may petition for a writ of mandamus to compel production of the requested records. R.C. 149.43(C)(1)(b); *see also State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770, ¶ 5. In pursuing or defending against a writ of mandamus, parties may be permitted to engage in discovery, consistent with the Rules of Civil Procedure and any other applicable rules governing discovery, in order to gather and exchange certain information that is relevant to the claims and defenses asserted. *See State ex rel. Gil-Llamas v. Hardin*, 2021-Ohio-1508, ¶ 17 (in original actions filed in the Supreme Court of Ohio, the Rules of Civil Procedure supplement the Rules of Practice of the Supreme Court unless the Civil Rules are clearly inapplicable); Civ.R. 26(A) (discovery allows attorneys to prepare cases thoroughly and to investigate all aspects of the case and prevents attorneys from taking undue advantage of an adversary's industry or efforts); R.C. 149.43(C)(4)(b)(iii) (stating that "[n]o discovery may be conducted on the issue of the alleged bad faith of the public office or person responsible for the public records" but silent on when discovery may be conducted in other circumstances).

{¶ 24} While the Public Records Act seeks to promote government transparency, discovery in a case involving the act cannot be used to circumvent the restrictions imposed by the General Assembly in R.C. 149.43(A)(1) and allow parties to gain access to documents that are otherwise inaccessible by law and to obtain final relief through the discovery process rather than through the mandamus process. For those reasons, discovery in a public-records case must be restricted to conform with

the purpose of discovery set forth in Civ.R. 26(A) and the scope of discovery set forth in Civ.R. 26(B)(1).

### B. Civ.R. 26(B)(1): Relevance and Proportionality

{¶ 25} Civ.R. 26(B)(1) creates boundaries for discovery by limiting the parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

By its plain terms, Civ.R. 26(B)(1) limits the scope of discoverable information to nonprivileged matter (1) that is *relevant* to any party's *claim* or *defense* and (2) that is *proportional* to the needs of the case, as guided by the considerations set forth in the rule.

{¶ 26} Matters are relevant to the asserted claims and defenses when the information sought might "reasonably lead to the discovery of admissible evidence." *Weckel v. Cole & Russell Architects*, 2013-Ohio-2718, ¶ 23 (1st Dist.); *see also Roe v. Planned Parenthood Southwest Ohio Region*, 2009-Ohio-2973, ¶ 27-28 (Civ.R. 26(B)(1) permits discovery of nonprivileged information, which need not be admissible at trial). In this case, we must view what is relevant for discovery purposes through the lens of what the underlying case is—a mandamus action seeking a writ compelling the attorney general to provide records under the Public Records Act. More specifically, relevance for discovery purposes must be viewed in light of Armiak's claims—i.e., that he is entitled to certain records that the attorney

general has wrongly withheld in response to his public-records request—and the attorney general's defenses—i.e., that Armiak is not seeking public records as defined by R.C. 149.43(A)(1) and that some requested records do not exist. Accordingly, relevant information for discovery purposes is that which may (1) show that the requested records fall within the definition of "public record"—i.e., "records kept by any public office," R.C. 149.43(A)(1), including "any document, device, or item . . . created or received by or coming under the jurisdiction of any public office of the state . . . which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office," R.C. 149.011(G)—and (2) address the attorney general's defenses that Armiak is not seeking public records and that some requested records do not exist.

{¶ 27} But discovery must not only be relevant to the parties' claims and defenses but also proportional to the needs of the case. Civ.R. 26(B)(1). The proportionality considerations that were added in 2020 to Civ.R. 26(B)(1) aligned the rule more closely with its federal counterpart, Fed.R.Civ.P. 26, *see Stull v. Summa Health Sys.*, 2024-Ohio-5718, ¶ 22, and created a greater need for close judicial involvement in the discovery process to ensure that there is a common-sense and reasonable restraint on discovery, *see Helena Agri-Ents., L.L.C. v. Great Lakes Grain, L.L.C.*, 988 F.3d 260, 273-274 (6th Cir. 2021). Proportionality requires a court to consider the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Civ.R. 26(B)(1).

{¶ 28} In a mandamus action seeking production of public records, relevant and proportional discovery will generally be limited by the nature of the public-records proceedings. In these cases, the requester seeks to secure records that he believes have been wrongfully withheld. *See* R.C. 149.43(C)(1)(b). Thus, the issues

are straightforward: (1) Do the records exist? (2) And if the records exist, do they meet the definition of "public record" under R.C. 149.43(A)(1) and are therefore subject to production?

{¶ 29} If the public office argues that the requested records do not exist, discovery surrounding that assertion will be limited to the process by which the search for the records was conducted. Federal courts reviewing cases involving production of records under the Freedom of Information Act ("FOIA"), 5 U.S.C. 522, have reached a similar conclusion. *See Schrecker v. United States Dept. of Justice*, 217 F.Supp.2d 29, 35 (D.D.C. 2002) ("Discovery is only appropriate when an agency has not taken adequate steps to uncover responsive documents."); *In re Clinton*, 973 F.3d 106, 113 (D.C.Cir. 2020) ("courts may order limited discovery where there is evidence . . . that the agency acted in bad faith in conducting the search").

{¶ 30} Generally, discovery is not favored in lawsuits brought under the FOIA. *See Judicial Watch, Inc. v. United States Dept. of Justice*, 185 F.Supp.2d 54, 65 (D.D.C. 2002). In these cases, a federal agency must submit detailed and nonconclusory affidavits or declarations, *see id.* at 63, describing "'what records were searched, by whom, and through what processes,'" *id.*, quoting *Steinberg v. United States Dept. of Justice*, 23 F.3d 548, 552 (D.C.Cir. 1994), and showing that the search was "'reasonably calculated to uncover all relevant documents,'" *id.*, quoting *Weisberg v. United States Dept. of Justice*, 705 F.2d 1344, 1351 (D.C.Cir. 1983). Federal courts accord these affidavits or declarations a presumption of good faith that cannot be rebutted by "'"purely speculative claims about the existence and discoverability of other documents."'" *Id.*, quoting *SafeCard Servs., Inc. v. Secs. & Exchange Comm.*, 926 F.2d 1197, 1200 (D.C.Cir. 1991), quoting *Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C.Cir. 1981). Discovery in FOIA cases is rare, and federal courts generally deny discovery when

"an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Schrecker* at 35.

{¶ 31} The rare case that discovery is permitted in a FOIA-related lawsuit is "when an agency has not taken adequate steps to uncover responsive documents." *Schrecker* at 35, citing *SafeCard Servs.* at 1202. Permitted discovery typically is "limited to the scope of the agency's search [for responsive records] and its indexing and classification procedures." *Heily v. United States Dept. of Commerce*, 69 Fed.Appx. 171, 174 (4th Cir. 2003); *see also Cole v. Rochford*, 285 F.Supp.3d 73, 77 (D.D.C. 2018), quoting *Weisberg v. United States Dept. of Justice*, 627 F.2d 365, 371 (D.C.Cir. 1980) (discovery in FOIA cases "is generally limited to cases in which factual disputes persist—for example, where 'the adequacy of the [agency's] search remains in doubt'" [bracketed text in original]); *Voinche v. Fed. Bur. of Investigation*, 412 F.Supp.2d 60, 71 (D.D.C. 2006) (explaining that discovery in FOIA matters is "limited to the adequacy of the agency's search and similar matters"). "Other appropriate lines of inquiry [in discovery] include how agency employees 'conducted a search, which files were reviewed, what search terms were used, how the documents were produced to [the agency's FOIA specialist], whether any documents were withheld from production, who made the decisions about withholding, and other relevant questions.'" (Second bracketed text in original.) *Cole v. Fed. Emergency Mgt. Agency*, 340 F.R.D. 485, 487 (D.D.C. 2022), quoting *Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d 1235, 1246 (11th Cir. 2008).

{¶ 32} Thus, utilizing the federal courts' understanding of relevant and proportional discovery in FOIA cases, we conclude that when requested records cannot be or have not been produced, courts should limit discovery in a public-records mandamus action to the nature of the public office's search for responsive records and to information relevant to the claims and defenses asserted by the parties.

{¶ 33} And when the requested records exist and can be produced but the parties dispute whether the records should be produced, any discovery must be

confined by the claims asserted by the requester and the defenses asserted by the public office relative to producing the records. In relation to the claims, discovery will be limited to evidence that may demonstrate that (1) the requester made the request, (2) to the appropriate public office, (3) that office withheld the requested records, and (4) the requested records were public records under R.C. 149.43(A)(1), i.e., records kept by the public office. *See* R.C. 149.43(B)(1); *see also State ex rel. Cincinnati Enquirer v. Sage*, 2015-Ohio-974, ¶ 11 (requested records meeting threshold definition of "public record" must fit within a statutory exception to be withheld). And in relation to any defenses, discovery will be limited to evidence that addresses the public office's defenses or the exception that the public office argues prevents production. *See Jones-Kelley*, 2008-Ohio-1770, at ¶ 10 (public-records custodian has burden to establish applicability of statutory exception).

{¶ 34} But in any circumstance, whether the requested records cannot be found or have been withheld, a court cannot order the production of the requested records that are sought in the action in discovery. *See Tax Analysts v. Internal Revenue Serv.*, 410 F.3d 715, 722 (D.C.Cir. 2005) (noting that courts must not allow discovery that would be tantamount to granting the final relief sought in FOIA cases). This is not to say that information concerning the requested records is off limits in discovery, if such information is relevant to the claims and defenses asserted by the parties and proportional to the needs of the case, but courts cannot order such broad discovery to create a black hole that would swallow the Public Records Act and warp it into a medium for parties to obtain records through the discovery process that are outside the scope of public-records production. To hold otherwise would thwart the purpose of discovery and gut the limitations of the Public Records Act.

{¶ 35} Furthermore, we emphasize that there is no need to order production of records that are being withheld under the Public Records Act in *discovery*, because if the records exist and are arguably responsive to the public-records request, the question whether the responsive records may be produced under R.C. 149.43 is an

issue for the reviewing court to determine by in camera review. *See State ex rel. Wallace v. State Med. Bd. of Ohio*, 2000-Ohio-213, ¶ 34; *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79 (1988), paragraph four of the syllabus (when a public office asserts that public records are unable to be produced and such an assertion is challenged, the court must make an individualized scrutiny of the records in question).

{¶ 36} Thus, discovery will be relevant and proportional in a public-records mandamus action when it satisfies the limited questions concerning production of the requested records. But discovery is *not* proportional when it is tantamount to providing the requester with the relief sought by the mandamus action.

### C. Interrogatories and Discovery Responses

{¶ 37} The court of appeals essentially ordered the attorney general to produce documents and respond to interrogatories without first determining whether the discovery was both relevant *and* proportional under Civ.R. 26(B). The court of appeals, in our view, placed the proverbial cart before the horse.

{¶ 38} The court-of-appeals magistrate concluded that the discovery at issue relates to the attorney general's defense that Armiak seeks documents that are not public records under R.C. 149.43(A)(1) and 149.011(G). *See* 2023-Ohio-364 at ¶ 70-72, 83 (10th Dist.). In reviewing whether to set aside the magistrate's order, the court of appeals roundly rejected the attorney general's argument that the scope of Armiak's discovery requests should be viewed through the lens of the statutory definitions of "public record" under R.C. 149.43(A)(1) and "records" under R.C. 149.011(G). The court of appeals characterized the attorney general's argument as "attempting to restrict the scope of discovery so that it is coterminous with the records request itself." *Id.* at ¶ 22. The scope of discovery, it reasoned, "is necessarily broader than the 'claim' itself for the records requested under R.C. 149.43." *Id.*

{¶ 39} The court of appeals' approach is flawed because the court allowed discovery that may not be reasonably tethered to the claims and defenses at issue,

which is required by Civ.R. 26(B)(1), and in effect granted Armiak the ultimate relief that he sought but without justification. As noted above, relevant evidence for discovery purposes is that which might show that the attorney general has withheld documents, devices, or items that meet the statutory definitions of "public record" under R.C. 149.43(A)(1) and "records" under R.C. 149.011(G). For the appellate court to decide the proper scope of discovery, it is necessary for that court to determine what sorts of "records" under R.C. 149.011(G)—i.e., documents, devices, or items—would fit that definition to decide what discovery would be relevant. Thus, we agree with the attorney general that relevant evidence for discovery purposes is that which might show that his office withheld documents, devices, or items that qualify as "records" as defined by R.C. 149.011(G) and a "public record" as defined by R.C. 149.43(A)(1). We therefore conclude that the appellate court erred when it failed to analyze the discovery requests in accordance with those definitions.

{¶ 40} We also recognize that the issue on which Armiak seeks discovery relates to whether the attorney general's interactions with RAGA and RLDF generated records of the "public office," which is defined by R.C. 149.011(A). *See* R.C. 149.011(G). We do not mean to foreclose the possibility that some discovery into that issue may be appropriate at some point. But the discovery compelled by the court of appeals went too far by permitting irrelevant discovery based on a mischaracterization of the attorney general's defense.

{¶ 41} In multiple filings below, Armiak asserted that the attorney general was claiming that his interactions with RAGA and RLDF are "unrelated" to his office's official functions. From that premise, Armiak appeared to argue that to avoid further discovery, the attorney general needed to show that his involvement with RAGA and RLDF was "purely personal" and "unrelated to the substantive work of his office." The court of appeals accepted this view. Indeed, the magistrate, whose decision the court of appeals upheld, concluded that Armiak is "entitled to reasonable discovery to test [the attorney general's] claim that his relationship with RAGA and

RLDF is a purely personal matter unrelated to the substantive work of his office." 2023-Ohio-364 at ¶ 70 (10th Dist.).

{¶ 42} This misconstruction of the attorney general's defense led the court of appeals to improperly broaden the scope of discovery in this case. Instead of examining whether the requested discovery might lead to evidence relevant to whether the attorney general's RAGA and RLDF activities are "activities of the office" under R.C. 149.011(G), the court of appeals examined whether discovery might lead to evidence showing that RAGA and RLDF *influence* the attorney general and his office's activities. *See* 2023-Ohio-364 at ¶ 50 (10th Dist.) (stating that "it is [the attorney general's] relationship with the organizations in question that he has consistently pointed to as the basis for asserting that the documents [Armiak] seek[s] are not public records" and that Armiak is "entitled to probe those justifications"); *id.* at ¶ 70; *see also id.* at ¶ 5 (noting Armiak's allegation that RAGA and RLDF are "'extremely influential pressure groups'"). But in doing so, the court of appeals wrongly concluded that evidence of the attorney general's participation in RAGA and RLDF activities is relevant, even if those activities are "not officially part of" his duties, *id.* at ¶ 41, 83.

{¶ 43} The amici curiae urging affirmance of the court of appeals' discovery order suggest that the order is supported by a statement in *State ex rel. Beacon Journal Publishing Co. v. Whitmore* that "[t]he R.C. 149.011(G) definition of 'records' has been construed to encompass '"anything a governmental unit utilizes to carry out its duties and responsibilities."'" 1998-Ohio-180, ¶ 11, quoting *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39 (1990), quoting *State ex rel. Jacobs v. Prudoff*, 30 Ohio App.3d 89, 92 (9th Dist. 1986). But this argument, too, misconstrues the issue. Indeed, while the attorney general argues that records pertaining to RAGA and RLDF generally do not document the activities of his office, he has not argued that his involvement with RAGA and RLDF is wholly unrelated to public duties. The attorney general concedes that records related to those

organizations may be public records *if* they document the activities of his office, acknowledging that the official activities of his office sometimes intersect with RAGA and RDLF. But R.C. 149.011(G) does not support allowing extensive discovery that explores, in general, how RAGA and RLDF may have influenced the personal activities of the attorney general himself or other activities that would fall outside the scope of his office. Discovery must be relevant to the claims and defenses—the fishing expedition that would have occurred under the court of appeals' discovery order is beyond the scope of relevant discovery related to the claims and defenses that have been raised by the parties in this case.

{¶ 44} We also conclude that the court of appeals did not undertake a meaningful examination of whether Armiak's discovery requests were proportional to the needs of the case, considering that the ultimate relief sought by Armiak is the production of public records. By granting Armiak's motion to compel discovery and ordering the attorney general to produce documents and respond to interrogatories, the court of appeals essentially ordered the disclosure of records sought in this mandamus action without Armiak's having to prove his entitlement to them under the Public Records Act.

{¶ 45} Furthermore, the court of appeals' discovery order compels the attorney general to respond to interrogatories requesting information relating to his office's interactions with RAGA and RLDF. *See* 2023-Ohio-364 at ¶ 24, 70-72 (10th Dist.). The court of appeals compelled the attorney general to respond to what amounts to requests for information, when it is well-settled that "[r]equests for information and requests that require the records custodian to create a new record by searching for selected information are improper requests under R.C. 149.43," *State ex rel. Morgan v. New Lexington*, 2006-Ohio-6365, ¶ 30.

{¶ 46} In sum, by way of compelling discovery, the court of appeals essentially permitted Armiak to "conduct his own search for the documents responsive to his [public-records] request," *Fed. Emergency Mgt. Agency*, 340 F.R.D

at 487. This is problematic because, again, the court of appeals essentially allowed discovery that was tantamount to granting the final relief Armiak seeks in this public-records mandamus action and that would lead to production of much more to which Armiak would not be entitled even if he were to prevail in the action. *See Tax Analysts*, 410 F.3d at 722.

{¶ 47} In his merit brief, Armiak argues that accepting the attorney general's position on the scope of discovery in a public-records mandamus action would render the Public Records Act "all but unenforceable." But this is not true—accepting the attorney general's position would not permit broad refusals to produce records that document the activities of a public office.

{¶ 48} This case involves a request for documents related to the attorney general's interaction with outside groups, which may or may not be a part of his office's activities. The discovery related to proving that those responsive records are *public* records must be tethered to the parties' claims and defenses, i.e., relevant to what constitutes an activity of the attorney general's office. For discovery to be proportional in this public-records case, Armiak could be entitled to discovery regarding the methodology of the attorney general's office's search for records responsive to his request. *See Fed. Emergency Mgt. Agency* at 487-488. The production-related discovery could be sufficient for a court to determine if any records that were excluded should have been produced. *See id.* But in any circumstance, the attorney general cannot be required to produce the requested records to Armiak in discovery; as noted by the attorney general in his merit brief, discovery cannot be "aimed at securing the same thing the [requester] hopes to win via final judgment," which is the production of records that the requester claims to be entitled to receive under the Public Records Act.

{¶ 49} As discussed above, public-records cases are relatively simple: the requester seeks production of a record, the record either exists or it does not, and, if it does exist, it is either producible or it is not. *See* R.C. 149.43(B)(1). While the

Public Records Act seeks to provide transparency to Ohioans about the innerworkings of the government by ensuring "accountability, integrity, and equity while minimizing sovereign mischief and malfeasance," *Kish v. Akron*, 2006-Ohio-1244, ¶ 16, the discovery process cannot be construed in a manner that moots the very action in which discovery is pursued. We therefore hold that the court of appeals misapplied the law and abused its discretion in granting Armiak's motion to compel. The court of appeals misconstrued what is at issue, failed to account for R.C. 149.011(G)'s definition of "records," and ordered discovery that was disproportionate to the scope of this case. Because of these foundational errors in the court of appeals' analysis, we need not reanalyze each disputed discovery request. Rather, we vacate the court of appeals' discovery order and remand this matter to that court for a proper determination of the parties' discovery motions.

### D. Deposition of the Attorney General

{¶ 50} For similar reasons, the court of appeals' decision to deny the attorney general's motion for protective order and allow his deposition is also flawed. The court of appeals' ruling did not consider whether the attorney general's deposition is proportional to the needs of this case. Civ.R. 26(B)(1).

{¶ 51} This court has endorsed the view that the deposition of a high-ranking government official should be allowed only in "extraordinary circumstances." *State ex rel. Summit Cty. Republican Party Executive Commt. v. Brunner*, 2008-Ohio-1035, ¶ 3. In *Brunner*, this court adopted a four-factor test to determine whether such an extraordinary circumstance exists. *Id.* at ¶ 4. The court being asked to allow the deposition should weigh the necessity of the deposition against (1) the substantiality of the case in which the deposition is requested, (2) the degree to which the witness has first-hand knowledge or direct involvement, (3) the probable length of the deposition and the effect on government business if the official must attend the deposition, and (4) whether less onerous discovery procedures can provide the information sought. *Id.*

{¶ 52} In this case, the court of appeals never required Armiak to satisfy the first part of the test—establishing the necessity of deposing the attorney general. Indeed, Armiak has already deposed multiple staff members in the attorney general's office, including the attorney general's chief of staff. The court of appeals skipped straight to the *Brunner* factors without explaining the need for the attorney general's deposition in the first place. *See* 2023-Ohio-364 at ¶ 40, 82 (10th Dist.). On that basis alone, the denial of the attorney general's motion for protective order was an abuse of discretion.

{¶ 53} Further, we disagree with the court of appeals' analysis of the *Brunner* factors. The first *Brunner* factor involves the substantiality of the case. *Brunner* at ¶ 4. The court of appeals accepted the notion that this case was substantial simply by virtue of this case involving "the question of whether or not a document qualifies as a public record under R.C. 149.43." 2023-Ohio-364 at ¶ 42 (10th Dist.). But under this reasoning, any public-records case would be substantial enough to satisfy the first prong of *Brunner*. If that were true, however, it would be inconsistent with the underlying premise of *Brunner* that depositions of high-ranking government officials are appropriate only in "extraordinary circumstances," *Brunner* at ¶ 3.

{¶ 54} As to the second factor, the court of appeals reasoned that "[t]he magistrate was not wrong in *assuming* that [the attorney general] has firsthand knowledge of the grounds for taking [the] position" that the sought-after records did not exist or did not qualify as public records. (Emphasis added.) 2023-Ohio-364 at ¶ 44 (10th Dist.). Thus, the court of appeals appears to have relied on the *assumption* that the attorney general *must* have firsthand knowledge of his office's response to Armiak's public-records request. This speculation is an extremely thin reed on which to resolve the second factor in favor of the attorney general's deposition.

{¶ 55} As to the third factor, the court of appeals concluded that an estimated two-hour deposition of the attorney general would not pose a major burden on him. *See id.* at ¶ 47. The attorney general argues here that the court of appeals' focus on

the length of a two-hour deposition was too narrow because the court failed to take into account that high-ranking government officials have greater duties and time constraints that must also be compared to other witnesses. Moreover, the attorney general contends that the precedent set by allowing his deposition would be enormous: to order a high-ranking government official to sit for a deposition in this public-records case will open the door to many more attempts to secure similar depositions in almost any public-records case, amounting to what could be considered as private press conferences of government officials that will require officials to take substantial time away from their official duties and will interfere with government business.

{¶ 56} We agree with the attorney general that the third factor cuts against his deposition. The third *Brunner* factor requires the court to consider not only the probable length of the deposition but also "'the effect on government business if the official must attend the deposition.'" *Brunner*, 2008-Ohio-1035, at ¶ 4, quoting *Monti v. State*, 151 Vt. 609, 613-614 (1989). The court of appeals did not address the attorney general's argument that allowing his deposition here would open the door to more such depositions in public-records cases. This disruption on government business should have been considered by the court of appeals in weighing the third *Brunner* factor.

{¶ 57} Finally, the fourth *Brunner* factor involves considering whether there are less onerous discovery procedures that might secure the information sought in a high-ranking government official's deposition. *Brunner* at ¶ 4. The court of appeals agreed with the magistrate's conclusion that the attorney general is the only person who could explain the relationship between his RAGA and RLDF activities and the public functions of his office. 2023-Ohio-364 at ¶ 48 (10th Dist.). But the court of appeals did not explain why the documents already submitted by the attorney general for in camera review were insufficient to enable it to determine whether records

relating to the attorney general's RAGA and RLDF activities were records of his office within the meaning of R.C. 149.011(G).

{¶ 58} On the record before us, the court of appeals misapplied the law and abused its discretion in denying the attorney general's motion for protective order.

## III. CONCLUSION

{¶ 59} For the foregoing reasons, we conclude that the Tenth District Court of Appeals misapplied the law and abused its discretion in granting Armiak's motion to compel discovery and in denying the attorney general's motion for protective order. We therefore vacate the Tenth District Court of Appeals' discovery order and remand the case to that court for proper consideration of Armiak's discovery requests.

Order vacated

and cause remanded.

_____

**BRUNNER, J., dissenting.**

{¶ 60} For over five years, appellees, the Center for Media and Democracy and David Armiak (collectively, "Armiak"), have been attempting to obtain public records in this case from appellant, the Office of Attorney General Dave Yost, regarding the Republican Attorneys General Association ("RAGA"), the Rule of Law Defense Fund ("RLDF"), and the 2020 RAGA winter meeting. This court has been considering the issues appealed here—discovery matters stemming from an interlocutory discovery order of the Tenth District Court of Appeals, matters which that court has broad discretion over, *see* 2024-Ohio-2786, ¶ 36 (Brunner, J., dissenting)—for over three of those years. I continue to believe that review of the Tenth District's discovery order by this court is unwarranted. *See id*. at ¶ 42 (Brunner, J., dissenting). But having further reviewed the discovery order and considered the parties' arguments, I would hold that the court of appeals did not abuse its discretion in issuing its discovery order.

{¶ 61} The majority opinion describes this case as "relatively simple," majority opinion, ¶ 49, and "straightforward," *id.* at ¶ 28, despite the length of time we have taken to issue a decision—we heard this case on oral argument in January 2025. Yet the majority opinion does not establish a new or more measured way for courts to determine the proper scope of discovery in public-records mandamus actions. Instead, the majority opinion substitutes its judgment for the court of appeals' judgment, even though the court of appeals enjoyed broad discretion in managing the discovery process, *see State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 2007-Ohio-5542, ¶ 18, and was in the best position to determine what discovery was needed for it to make a well-informed decision on the legal arguments before it. This court should guard against taking any steps toward turning off the lights on the Public Records Act. I dissent.

## I. Review of the discovery order issued by the court of appeals

{¶ 62} The purpose of discovery is to facilitate the "free flow" of information between the parties. *Weckel v. Cole & Russell Architects*, 2013-Ohio-2718, ¶ 24 (1st Dist.). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Information sought in discovery may go beyond the scope of what would be admissible in evidence, so long as it is relevant to any party's claim or defense and proportional to the needs of the case,

> considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Civ.R. 26(B)(1).

{¶ 63} The court of appeals, acting in this original action as the trial court, enjoyed broad discretion in managing the discovery issues raised by the parties. *See Grace v. Mastruserio*, 2007-Ohio-3942, ¶ 38 (1st Dist.), *abrogated on other grounds by Eddy v. Farmers Property Cas. Ins. Co.*, 2026-Ohio-626, ¶ 30, quoting *Penn Cent. Transp. Co. v. Armco Steel Corp.*, 27 Ohio Misc. 76, 80 (C.P. 1971) (a trial court "'has the same if not greater right and duty to regulate discovery as it does to control the trial and to impose reasonable limits and conditions, consistent with the rules, to expedite the administration of justice'"). Therefore, when reviewing a discovery order, we generally employ a highly deferential standard and will disturb the order only after finding an abuse of discretion. *Nakoff v. Fairview Gen. Hosp.*, 1996-Ohio-159, ¶ 13 (lead opinion) (abuse of discretion evinced when "the result [is] so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias"); *see also State v. Hickman*, 2024-Ohio-5747, ¶ 32, quoting *State v. Hill*, 2022-Ohio-4544, ¶ 9, quoting *State v. Beasley*, 2018-Ohio-16, ¶ 12 (abuse of discretion defined as "'"'conduct that is unreasonable, arbitrary or unconscionable'"'").

{¶ 64} The majority opinion acknowledges that the court of appeals was entitled to broad discretion over the parties' discovery disputes, majority opinion at ¶ 19, but it shows no deference to the court of appeals' analysis. Instead, the majority opinion nitpicks the findings and conclusions of the court of appeals, with little explanation about how the court of appeals went beyond its authority in making those determinations. This court, sitting in the same seat as the court of appeals, may have reached a different decision on the discovery issues presented. But the fact that the majority opinion prefers a different outcome does not mean the court of appeals abused its discretion. *See State v. Weaver*, 2022-Ohio-4371, ¶ 24 ("an abuse of discretion involves more than a difference in opinion").

{¶ 65} In my view, the court of appeals applied the correct legal standards and issued an order regarding Armiak's motion to compel and the attorney general's motion for protective order that was within the bounds of its authority and discretion.

*A. The majority opinion insulates the attorney general from further discovery by unreasonably construing the parties' claims and defenses*

{¶ 66} A records requester in a public-records mandamus action, like a relator in any mandamus case, has the burden of establishing by clear and convincing evidence that he has a clear legal right to the relief requested. *See State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246, ¶ 16. Here, Armiak requested "emails, attachments, both sent and received, all draft records, briefing books, memos, notes, minutes, scheduling records, text messages, other correspondence (internal and external) and all other records" that the attorney general and his staff possessed regarding RAGA, RLDF, and the 2020 RAGA winter meeting. As such, discovery relevant to Armiak's claim that he is entitled to these records would be any information that tends to show that the requested records (1) are public records covered by Ohio's Public Records Act and (2) are maintained by the attorney general or his staff. *See State ex rel. Cordell v. Paden*, 2019-Ohio-1216, ¶ 8.

{¶ 67} Determining the scope of relevant discovery as it relates to the attorney general's defenses is not so straightforward. This is in part because the attorney general's defenses continued to develop and evolve as the case proceeded.

> First, his office told Armiak that the records they were requesting were "exempt from disclosure" and "not a record" of the attorney general's office. *See* 2023-Ohio-364[,] ¶ 3 (10th Dist.). Then his office took the position that "no such email, text, drafts, memo, minutes, or other correspondence records exist." *See id.* at ¶ 62. The

attorney general then produced some documents for in camera inspection and informed the court of appeals that although additional emails pertaining to the request existed, it was the position of the attorney general's office that "these personal emails containing no public-records content are not responsive to the public records request and are not subject to an in camera review in a public records mandamus action."

2024-Ohio-2786 at ¶ 39 (Brunner, J., dissenting).

{¶ 68} The attorney general objected to many of Armiak's discovery requests based on his view that discovery should be limited in scope to the documents identified in Armiak's public-records request. He also acknowledged that his office had documents responsive to Armiak's public-records request but claimed that those documents were "non-record[s]." The court-of-appeals magistrate overseeing the case below recognized that by asserting the defense that no records exist because those that do exist fail to meet the definition of "records" under the Public Records Act, the attorney general "evade[d] any inquiry by [Armiak] or the court into the status of *potentially* responsive documents that do exist" (emphasis in original), 2023-Ohio-364 at ¶ 85 (10th Dist.).

{¶ 69} R.C. 149.011(G) defines "records" as

any document, device, or item . . . created or received by or coming under the jurisdiction of any public office of the state . . . which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office. "Records" does not include personal notes or any document, device, or item . . . of a public official, or of the [public] official's attorney, employee, or agent, that is used, maintained, and accessed solely by the

individual who creates it or causes its creation.

It may be readily apparent based on the face of Armiak's public-records request that a record being sought is a "non-record" under this definition. But the claims and defenses in this case require a fact-specific inquiry about whether the records requested by Armiak "serve[] to document the organization, functions, policies, decisions, procedures, operations, or other activities" of the attorney general's office, *id.*

{¶ 70} In my view, the court-of-appeals magistrate carefully worked within the parameters of Armiak's discovery efforts while wrestling with the problems presented by the attorney general's ever-evolving defenses. The magistrate rejected the attorney general's artificial limitations and instead adhered to the general rule that discovery would be governed by Civ.R. 26(B). *See* 2023-Ohio-364 at ¶ 67 (10th Dist.). And this approach is consistent with our mandate to broadly construe the provisions defining public records in the Public Records Act and to resolve any doubts in favor of disclosure. *See State ex rel. Cincinnati Post v. Schweikert*, 38 Ohio St.3d 170, 173 (1988). The majority opinion ignores these principles.

{¶ 71} The crux of the attorney general's defense is that any records his office has pertaining to RAGA, RLDF, and the 2020 RAGA winter meeting do not meet the statutory definition of "records," because they do not "serve[] to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office," R.C. 149.011(G). Therefore, discovery is relevant to this defense if the discovery tends to show whether the attorney general has records related to RAGA, RLDF, and the 2020 RAGA winter meeting and if so, whether those records document the official functions, policies, decisions, operations, or other activities of his office.

{¶ 72} The majority opinion faults the court of appeals for misconstruing the attorney general's defense and allowing Armiak to conduct discovery related to

the attorney general's *relationship* with RAGA and RLDF instead of limiting discovery to information relevant to whether responsive documents would meet the definition of "records" under R.C. 149.011(G). *See* majority opinion at ¶ 42. But the attorney general admitted in his opposition to Armiak's motion to compel that some documents of his office that relate to RAGA or RDLF may be "records" and subject to the Public Records Act. And neither the attorney general nor the majority opinion proposed a framework for courts to use when analyzing whether a requested record serves to document official activities while lacking information about what constitutes an official activity.

{¶ 73} Courts do not defer to other branches of government when answering questions of law, *see TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677, ¶ 33, which is essentially what the majority opinion is instructing the court of appeals to do on remand. The court-of-appeals magistrate was not required to accept at face value the attorney general's determination that any existing records do not fit the statutory definition of "records." *See Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 30 (a public official may not rely on unsupported, conclusory statements to justify withholding a public record).

{¶ 74} The approach employed by the court of appeals in determining what information would be relevant to the claims and defenses of the parties was not unreasonable, especially in light of the attorney general's evasive conduct and evolving defenses.

*B. The majority opinion's attempt to craft special rules fails to change the scope of discovery in public-records mandamus actions*

{¶ 75} The majority opinion purports to set forth three rules regarding the scope of discovery in a public-records mandamus action. But the majority opinion says nothing new or important about cases involving the Public Records Act or discovery in public-records mandamus actions.

{¶ 76} First, the majority relies on a number of federal-court cases involving the production and inspection of records under the Freedom of Information Act ("FOIA"), 5 U.S.C. 552, to evoke a rule that discovery should be disfavored, rare, and limited in scope to only information related to the government's search for the requested records. Majority opinion at ¶ 30-32. Applying principles announced in FOIA cases to Ohio public-records mandamus actions is not appropriate or helpful, because a records requester seeking to obtain documents from a public official in Ohio bears a different burden in proving his claim than a FOIA requester. However, as I explain more fully below, if we require the public official to bear the burden of proving that the requested records do not meet the definition of "records" under R.C. 149.011(G), which is what FOIA would require, *see* 5 U.S.C. 552(a)(4)(B), we may avoid many of the discovery problems that have arisen in this case and could adopt the majority opinion's rule that discovery involving public records should be disfavored, rare, and limited.

{¶ 77} Another problem with using FOIA cases as a source of authority for a disfavored-rare-and-limited discovery rule is that many of the FOIA cases actually involve quite extensive discovery,[1] proving what the rule implies—that there will be "exception[s] to limiting the scope of discovery," *Voinche v. Fed. Bur. of Investigation*, 412 F.Supp.2d 60, 72 (D.D.C. 2006). We need not strain to adopt a limited view of the exchange of information, especially in cases involving the disclosure of public records, when we have already determined that in Ohio, discovery is generally permissible in mandamus actions in the same manner as civil

---

1. For example, in *In re Clinton*, a federal district court approved a discovery plan that involved two rounds of discovery, which included multiple sets of interrogatories and depositions of several former government officials and employees. 973 F.3d 106, 110-111 (D.C.Cir. 2020). And in *Weisberg v. United States Dept. of Justice*, over the course of 13 years of litigation, the records requester deposed several agents of the Federal Bureau of Investigation and conducted multiple rounds of written discovery on several federal agencies. 705 F.2d 1344, 1347-1350 (D.C.Cir. 1983).

actions, *State ex rel. Marchiano v. School Emps. Retirement Sys.*, 2009-Ohio-307, ¶ 24.

{¶ **78**} Second, the majority opinion concludes that "courts should limit discovery in a public-records mandamus action to the nature of the public office's search for responsive records *and to information relevant to the claims and defenses asserted by the parties*." (Emphasis added.) Majority opinion at ¶ 32.[2] This is nothing new. The scope of discovery is already limited to "any nonprivileged matter that is relevant to any party's claim or defense." Civ.R. 26(B)(1). Therefore, if a public official's defense to a records request is that no records exist, then information about how the public office stores records or what the public official did to search for the records is relevant to that defense. Similarly, if a public official claims that the requested records do not meet the definition of "records" under R.C. 149.011(G), then information that is relevant to the statutory definition of records is discoverable. The majority agrees with this premise. *See* majority opinion at ¶ 39. But the majority opinion concludes that the court of appeals failed to analyze Armiak's discovery requests "in accordance with [the] definitions" of "records" under R.C. 149.011(G) and a "public record" under R.C. 149.43(A)(1). *Id.* This is not a reasonable reading of the court of appeals' discovery order.

{¶ **79**} The court-of-appeals magistrate determined that Armiak was "entitled to obtain discovery to challenge the factual basis for [the attorney general's] refusal to provide the requested records." 2023-Ohio-364 at ¶ 71 (10th Dist.). The magistrate examined each disputed discovery item and found that some of Armiak's requests for production of documents and interrogatories were not within the relevant scope of discovery. For example, as to interrogatory No. 6, the magistrate agreed with the attorney general that the interrogatory was "overbroad

---

2. At times, the majority states that "evidence" is obtained in discovery. Majority opinion at ¶ 33. This is a distortion of the rule, as "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable," Civ.R. 26(B)(1).

on its face," *id.* at ¶ 73. The magistrate reserved a decision on other discovery items. *See id.* at ¶ 75. And the magistrate ordered the attorney general to answer other interrogatories and produce some of the requested documents. *See id.* at ¶ 70-72, 77-78, 80, 88. As to the attorney general's argument that interrogatory No. 2 was "overbroad," the magistrate disagreed and reasoned that "[i]dentifying staff who, in the course of their agency duties, attend RAGA- and RLDF-related functions is relevant to evaluating respondent's claim that these organizations are unrelated to his official duties," *id.* at ¶ 71.

{¶ 80} If there exists a want of analysis, it lies with the attorney general's actions and the approach of the majority opinion. Neither the attorney general nor the majority opinion explain how any specific discovery request that the court-of-appeals magistrate ordered the attorney general to answer is irrelevant to the claims or defenses of the parties. Instead, the attorney general claims in his merit brief that "[n]one of this ordered discovery is relevant." But as the court of appeals found, the attorney general is simply attempting to "restrict the scope of discovery so that it is coterminous with the records request itself." *Id*. at ¶ 22. The attorney general is not making a relevancy argument but rather is attempting to confine the proportions of discovery.

{¶ 81} And it is from this point that the majority opinion derives its third and final rule, holding that under no circumstances can a court order the records that are the subject of the underlying public-records request to be produced in discovery. Majority opinion at ¶ 34. This is a pretense. Of course, Armiak must establish that he is entitled to the records sought in his public-records request before the court of appeals can compel the attorney general to produce them. *See State ex rel. Dispatch Printing Co. v. Johnson*, 2005-Ohio-4384, ¶ 19. But if responsive documents are uncovered during discovery, the attorney general should provide them to Armiak to comply with the public-records request. *See* R.C. 149.43(B)(1) ("all public records responsive to the request shall be promptly prepared and made

available"). As the majority opinion recognizes, if the attorney general disputes whether potentially responsive records uncovered in discovery must be disclosed, this "is an issue for the reviewing court to determine by in camera review." Majority opinion at ¶ 35.

{¶ 82} The legal standards set forth in the majority opinion are the same legal standards we already apply to matters concerning discovery in public-records mandamus actions. They are also the same legal standards that the court of appeals employed when it exercised its broad discretion over the parties' discovery disputes.

*C. The majority opinion affords more deference to the attorney general than the court of appeals in protecting him from deposition*

{¶ 83} This court has established a test for determining whether, in extraordinary circumstances, a high-ranking government official should be compelled to sit for a deposition. The test derives from *State ex rel. Summit Cty. Republican Party Executive Commt. v. Brunner* and instructs courts to balance the necessity to depose the official against other factors, including

> "[1] the substantiality of the case in which the deposition is requested;
> [2] the degree to which the witness has first-hand knowledge or direct
> involvement; [3] the probable length of the deposition and the effect
> on government business if the official must attend the deposition; and
> [4] whether less onerous discovery procedures provide the
> information sought."

2008-Ohio-1035, ¶ 4, quoting *Monti v. State*, 151 Vt. 609, 613-614 (1989).

{¶ 84} The majority opinion again faults the court of appeals over its application of the *Brunner* test. At the outset, the majority opinion claims that the court of appeals failed to *first* establish the necessity of deposing the attorney general. Majority opinion at ¶ 52. But the majority opinion misstates the test. Necessity is

not established in the beginning of the analysis, nor is it an independent determination. Rather, the necessity to depose the high-ranking official is *weighed* against the other factors. *Brunner* at ¶ 4, quoting *Monti* at 613 ("'[T]rial courts should weigh the necessity to depose or examine an executive official against, among other factors, . . .'"). After examining the *Brunner* factors, the magistrate concluded, "There is no question that [the attorney general], far more than his staff, has the pertinent information regarding the extent to which participation in RAGA and RLDF activities should be considered within the scope of his public duties and activities." 2023-Ohio-364 at ¶ 85 (10th Dist.).

{¶ 85} The first specified factor to weigh against the necessity of the deposition is the substantiality of the case. *Brunner* at ¶ 4. Contrary to the majority opinion's conclusion, *see* majority opinion at ¶ 53, the court of appeals did not find that this case presented substantial issues, because it involves an ordinary question about whether or not a document qualifies as public record. This is not a serious reading of the court of appeals decision. The court of appeals stated that public-records cases *may* present a matter of great public importance, 2023-Ohio-364 at ¶ 42 (10th Dist.), but the court-of-appeals magistrate wrote that "[t]he question of whether the Ohio Attorney General's documents and materials pertaining to his participation in the activities of organizations related to, but not officially part of, his duties is facially important enough to support a deposition in this case *if the other factors are met*" (emphasis added), *id.* at ¶ 83.

{¶ 86} As to the second *Brunner* factor, the majority opinion finds that the court of appeals speculated that the attorney general had firsthand knowledge about whether responsive records existed or qualified as public records. Majority opinion at ¶ 54. In truth, the court of appeals relied on the attorney general's own statements—"unearthed" in discovery—that he forwards emails from his state account to his personal one and vice versa. 2023-Ohio-364 at ¶ 45 (10th Dist.). Further, it is not speculation to assume that a public official has firsthand knowledge

of his office's "organization, functions, policies, decisions, procedures, operations, or other activities," R.C. 149.011(G). If the attorney general contends that any records he possesses do not meet this statutory definition of "records," he has firsthand knowledge about his rationale for taking that position. *See Brunner*, 2008-Ohio-1035, at ¶ 6 ("The [public official's] personal knowledge and thought process in arriving at her decision lies at the heart of this case.").

{¶ 87} As to the third *Brunner* factor, the court of appeals found that the attorney general failed to offer a concrete illustration of the burden that a short deposition conducted at his convenience would cause to him. 2023-Ohio-364 at ¶ 47 (10th Dist.). The attorney general argues in his merit brief that allowing Armiak to take his deposition in this case will set a precedent that would have a "severely deleterious" effect on government business. But because the attorney general does not articulate the burden that he would face in this case if he was compelled to sit for a deposition, this factor cannot be weighed against the necessity of the deposition.

{¶ 88} The majority opinion accepts the attorney general's assertion that his two-hour deposition in this case could "open the door" to similar intrusions in other public-records cases. Majority opinion at ¶ 55. Yet this acceptance is not based on any real information illustrating the potential problem, like the number of public-records mandamus actions that have been filed against the attorney general or his staff or that involve his emails or records. And the attorney general does not identify any basis for his assertion that his deposition *in this case* will lead to his being compelled to sit for a deposition *in other cases*, especially when the *Brunner* factors are case-specific and do not create a blanket rule authorizing such a deposition. The majority opinion sends a mixed message about speculation by adopting the attorney general's position but criticizing the court of appeals for far less questionable assumptions.

{¶ 89} As to the final *Brunner* factor, the majority opinion finds that the court of appeals did not explain why the attorney general's deposition was necessary in

light of the information already provided in discovery. *See* majority opinion at ¶ 57. But the court-of-appeals magistrate clearly set forth that the attorney general was "ultimately[] the only person qualified to explain the relation between his RAGA and RLDF activities and the public functions of his office." 2023-Ohio-364 at ¶ 85 (10th Dist.) And the magistrate found that the information provided up to that point in discovery consisted of only a conclusory statement in an affidavit from the attorney general. *See id.* The numerous disputes over discovery in the case indicate that a deposition is probably the least onerous way to obtain the information Armiak seeks about the attorney general's defense. *See Brunner*, 2008-Ohio-1035, at ¶ 8 (under the circumstances, a public official's deposition would avoid a potentially lengthy battle over other forms of discovery seeking the same information).

{¶ 90} Unfortunately, the majority opinion bends its proverbial arc toward protecting the attorney general from being compelled to sit for a deposition, thereby sacrificing the transparency that justice requires. The court-of-appeals magistrate and the court of appeals appropriately weighed the factors set forth in *Brunner* against the necessity of taking the attorney general's deposition when it ruled on the attorney general's motion for protective order.

## II. Establishing an appropriate burden of proof for the attorney general's defense

{¶ 91} Given the rationale of the majority opinion, it is difficult to see how Armiak could ever carry the burden of establishing that the records he seeks are "records" under R.C. 149.011(G). When a public official asserts that the requested records do not meet the statutory definition of "records," the public official should carry the burden of establishing that disclosure is not required.

{¶ 92} We already employ this approach when a public official refuses to produce a record because he claims that the record is subject to a statutory exemption to disclosure. We strictly construe exemptions under the Public Records Act against the records custodian. *State ex rel. Sultaana v. Mansfield Corr. Inst.*,

2023-Ohio-1177, ¶ 21. Therefore, when a public official claims an exemption, the public official has the burden of establishing that the requested records "fall squarely within" the exemption. *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770, paragraph two of the syllabus.

{¶ 93} We have explained that this approach is necessary because (1) the records requester is at a "distinct disadvantage" when the public office holds the knowledge of the contents of any potentially responsive documents, (2) this approach is consistent with the general rule regarding statutory exemptions, and (3) this approach is consistent with the principle that disputes over the construction of the Public Records Act should be resolved in favor of disclosure. *See State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 83 (1988).

{¶ 94} For several reasons, we should employ the same approach when the public official claims that the requested records do not meet the definition of "records" under R.C. 149.011(G).

{¶ 95} First, we must reemphasize the importance of resolving disputes over application of the Public Records Act in favor of disclosure. And interpreting the statutory definition of "records" may have far greater impact than interpreting an exemption, which affects only a subset of records.

{¶ 96} Second, whether a record meets the definition of "records" under R.C. 149.011(G) operates like an exemption. An exemption is something that is excluded from a rule or law's operation. *See Black's Law Dictionary* (12th Ed. 2024) (defining "exemption"). For example, the Public Records Act tells us what a "public record" is, R.C. 149.43(A)(1), and isn't, R.C. 149.43(A)(1)(a) though (bbb). When a record falls squarely within one of the statutory exemptions, it is excluded from the Public Records Act's operation and is not subject to disclosure. *See Cincinnati Enquirer*, 2008-Ohio-1770, at paragraph two of the syllabus. Similarly, the definition of "records" under R.C. 149.011(G) limits the operation of

the Public Records Act—depending on whether a record falls within that statutory definition, it may be excluded from the act's application.

{¶ 97} And finally, as the magistrate below found, "[t]here is no question that [the attorney general] . . . has the pertinent information regarding the extent to which participation in RAGA and RLDF activities should be considered within the scope of his public duties and activities," 2023-Ohio-364 at ¶ 85 (10th Dist.). Armiak faces a distinct disadvantage in proving that the requested records meet the definition of "records" under R.C. 149.011(G).

{¶ 98} Since the majority opinion seems eager to apply federal FOIA cases to discovery in public-records mandamus actions, why not also extend the federal approach to the burden of proof in those actions? When a FOIA complaint is filed in federal court, the government bears the burden of establishing that its response to the FOIA request was proper. *See* 5 U.S.C. 552(a)(4)(B). The government can meet this burden by providing detailed, nonconclusory affidavits explaining the manner in which searches were conducted for responsive records or supporting an argument that a FOIA exemption prohibits disclosure of the requested records. *See Heily v. United States Dept. of Commerce*, 69 Fed.Appx 171, 173 (4th Cir. 2003). A FOIA requester may rebut the government's burden, *see Carney v. United States Dept. of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), but the disclosure of information and narrowing of the issues in the beginning of a case also explains why discovery is generally limited in FOIA cases to the scope of the government's search for records, *see Heily* at 174.

{¶ 99} Shifting the burden to the public official in public-records mandamus actions would solve most of the discovery problems that are suggested in the majority opinion. Had the attorney general set forth the specific factual support in a properly detailed affidavit for his position that any "emails, attachments, both sent and received, all draft records, briefing books, memos, notes, minutes, scheduling records, text messages, other correspondence (internal and external) and all other

records" he possessed related to RAGA, RLDF, and the 2020 RAGA winter meeting do not constitute public records and are not subject to disclosure, further discovery—including his deposition—would likely be unnecessary. This is similar to what we already require when a public official claims a record is subject to a statutory exemption and it is not readily apparent from the content of the record whether the exemption applies. *See Sultaana*, 2023-Ohio-1177, at ¶ 34.

{¶ 100} If the attorney general can satisfy its burden and if Armiak can then establish a genuine issue of fact about the adequacy of the attorney general's search or the propriety of the attorney general's withholding of records, Armiak should be permitted to conduct limited discovery on these issues. *See Porter v. United States Dept. of Justice*, 717 F.2d 787, 793 (3d Cir. 1983). Ultimately, it should be the responsibility of the attorney general to disgorge potentially responsive records to the court of appeals for in camera inspection and a determination about whether those records meet the definition of "records" under R.C. 149.011(G).

{¶ 101} This court holds public-records requesters to a high standard of proof before an extraordinary writ will issue compelling a production of public records. *See Hicks v. Union Twp. Clermont Cty. Bd. of Trustees*, 2024-Ohio-5449, ¶ 15 (records requester must show by clear and convincing evidence that requested records fall under R.C. 149.011(G) and 149.43). When a public official claims that disclosure of requested records is not required because the records are exempt or do not meet the statutory definition of "records," the public official should have the burden to prove that the records fall squarely within the claimed exemption or do not meet the statutory definition of "records."

### III. Conclusion

{¶ 102} Interpreting the definition of "records" under R.C. 149.011(G) is central to this case. It should be noted that the statutory provision does not qualify the "organization, functions, policies, decisions, procedures, operations, or other activities of the office" that a record might serve to document. The statutory

provision does not require the record to document only *legitimate* functions or activities of the office, because "the purpose of Ohio's Public Records Act, R.C. 149.43, is to expose government activity to public scrutiny," *State ex rel. WHIO-TV-7 v. Lowe*, 1997-Ohio-271, ¶ 13.

{¶ 103} Public scrutiny through broad access to public records is a fundamental tenet of the people of Ohio's right to exercise self-governance. *Id.*; *see also State ex rel. GateHouse Media Ohio Holdings II, Inc. v. Columbus Police Dept.*, 2025-Ohio-5243, ¶ 138 (Brunner, J., concurring in part and dissenting in part) ("Among the most prominent rights guaranteed by the Ohio Constitution are rights ensuring that the government does not obstruct the flow of information needed for the people to provide informed consent."). As this court continues to whittle the public's right to examine the public's own records into almost nothing, I ask the people of Ohio to consider whether this is consistent with their collective ideas and values. I have grave doubt that the people of Ohio consent to their government operating in secrecy. I therefore continue my adamant dissent to this court's path of enabling the government to do so.

_____

The Gittes Law Group, Frederick M. Gittes, and Jeffrey P. Vardaro, for appellees.

Dave Yost, Attorney General, Mathura J. Sridharan, Solicitor General, Michael J. Hendershot, Chief Deputy Solicitor General, and Julie Pfeiffer and Ann Yackshaw, Assistant Attorneys General, for appellant.

Office of the Utah Attorney General and Stanford E. Purser, Utah Solicitor General, urging reversal for amici curiae States of Utah, Alabama, Alaska, Arkansas, Florida, Georgia, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, Oklahoma, South Carolina, Texas, and Virginia.

Marshall Forman & Schlein, L.L.C., Madeline J. Rettig, John S. Marshall,

SUPREME COURT OF OHIO

and Louis A. Jacobs, urging affirmance for amici curiae League of Women Voters of Ohio, The Marshall Project, and Ohio NOW Education and Legal Fund.

————————————